CRAWFORD, Judge
(concurring in the result).
I agree that the military judge abused his discretion by conducting a flawed analysis under Military Rule of Evidence (M.R.E.) 403, and would reverse on that ground. However, I cannot join in the majority’s reasoning because the judge also abused his discretion by determining evidence of Appellant’s childhood act to be logically relevant under M.R.E. 401.
To be legally relevant, evidence must first be logically relevant. If Appellant’s childhood sexual act is not legally relevant to show his propensity to commit similar acts as an adult because “there is no evidence suggesting that Berry’s mens rea at twenty-one was the same as it was when he was a child of thirteen,” 61 M.J. at 97, then it was not logically relevant to show his propensity to commit similar acts in the first place.
*99 Relevant evidence under M.R.E. 401 is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” In this ease, the military judge found that “[t]he proffered evidence is similar to the charged misconduct because it involves taking advantage of a vulnerable victim.” Without elaboration, the majority accepts that similarity of conduct as sufficient to establish logical relevance. Given the facts of this case, however, and considering the purpose for which the evidence was offered, logical relevance requires more.
The Government offered Appellant’s childhood act under M.R.E. 418, which permits introduction of so-called “propensity evidence,” i.e., “[t]he rule permits the prosecution to use evidence of the accused’s uncharged past sexual assaults for the purpose of demonstrating his propensity to commit the charged offenses.” United States v. Parker, 59 M.J. 195, 198 (C.A.A.F.2003) (citation and internal quotation marks omitted). The military judge denied the defense’s motion to exclude LS’s testimony and instructed the members that they may consider LS’s testimony “for the purpose of its tendency, if any, to show that the accused has a propensity to commit noneonsensual sexual acts against vulnerable persons.” To be logically relevant to this purpose, the evidence must have some “tendency to make the existence of’ appellant’s propensity “more probable ... than it would be without the evidence.” M.R.E. 401. As we recognized in United States v. Wright, 53 M.J. 476 (C.A.A.F.2000), M.R.E. 413 opens with a reminder that, while generally admissible, evidence must first be “relevant”:
In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused’s commission of one or more offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.
M.R.E. 413(a)(emphasis added);[1] Wright, 53 M.J. at 480.
Conceding that the military judge did not cite propensity as the “fact” to which this evidence was relevant, the majority then concludes that “[f]rom strictly a propensity viewpoint, the evidence does show that Berry had participated in similar conduct in the past. This evidence, therefore, does have some tendency to make it more probable that Berry committed a noneonsensual act against a vulnerable person[.]” 61 M.J. at 95. This statement is particularly troubling in light of the later conclusion that “there is no evidence suggesting that Berry’s mens rea at twenty-one was the same as it was when he was a child of thirteen.” 61 M.J. at 97. From these statements, one must conclude that the mere happenstance of a similar, earlier act demonstrates per se relevance to propensity, even absent evidence or presumption of a similarity of mens rea,[2] or, presumably, character. Such a conclusion strongly suggests that even differences in mental competence (and certainly differences in cognitive and emotional development) are inapplicable to a threshold analysis under M.R.E. 401 — a departure from the application of that rule that I cannot embrace, for it leads to the conclusion that the mindless act of an infant is per se logically relevant to prove the state of mind or character of that *100 infant as an adult and would be admissible unless excluded for some other reason. “[Evidence] may also be inadmissible as irrelevant because a link in the chain of facts is missing that is required to give probative value to the evidence.” 1 Wharton’s Criminal Evidence § 4-5 at 298-99 (footnote omitted); see also M.R.E. 104(b); cf. Johnson v. Elk Lake School District, 283 F.3d 138, 154-55 (3d Cir.2002)(applying Fed.R.Evid. 104(b) to Fed.R.Evid. 413(d)). In applying M.R.E. 413, I believe the majority has confused evidence relevant to state of mind and character[3] with evidence relevant to happenstance, and in so doing, has departed from our recently announced analysis in United States v. McDonald, 59 M.J. 426 (C.A.A.F.2004),[4] rejecting evidence for its failure to satisfy M.R.E. 401. In McDonald, this Court stated:
The military judge found, and the court below agreed, that the evidence was logically relevant both as to “common plan” and “intent.” We disagree. Applying the second prong of Reynolds, we hold that the evidence of Appellant’s uncharged acts was not logically relevant to show either a common plan or Appellant’s intent.
59 M.J. at 429-30 (internal citation omitted).
Because M.R.E. 413, as employed in this case, demands logical relevance to a character trait — propensity to commit sexual acts with vulnerable persons — I would again conclude that evidence of sexual acts that occurred when the defendant was thirteen is not logically relevant to prove character or cognition of that child as an adult, absent “evidence of that 13-year-old adolescent’s mental and emotional state, sufficient to permit meaningful comparison with Appellant’s character as an adult.” McDonald, 59 M.J. at 430. While Appellant’s case presents a gap of only eight years between the acts, as opposed to the twenty years in McDonald, those intervening years share the same evi-dentiary deficiency: failure to account for the effects of puberty and adolescence on either cognitive development or character. In McDonald, we required the appellant to establish the logical relevance of a thirteen-year-old’s “mental and emotional state” to the state of mind of that child as an adult. In this case, we examine the logical relevance of a thirteen-year-old’s acts to the “propensity” of that child as an adult to engage in similar acts. I recognize that there is no meaningful distinction between the relevance we required in McDonald and the relevance we should require here.
Happenstance vs. character and state of mind. In our practice, as in the federal district courts, the undertaking of an act is frequently relevant in and of itself, without regard to the state of mind of the actor in performing the act. See, e.g., M.R.E. 304 (confessions and admissions), M.R.E. 321 (eyewitness identification), and M.R.E. 406 (habit and routine). In the course of a trial, innumerable other contexts arise in which proof of an act is relevant merely to show that the act occurred (e.g., facts establishing nonvolitional elements of offenses). In other contexts, relevance requires that happenstance be paired with a specific purpose (e.g., M.R.E. 608(b) evidence of prior conduct must be probative of truthfulness or untruthfulness); M.R.E. 801(d)(l)(B)(prior consistent statement must precede motive to fabricate).
Character or state of mind evidence. When intent, plan, purpose, or character are involved — when the fact made more or less probable is a quality of cognition — mere happenstance may not be sufficient to establish logical relevance. McDonald, 59 M.J. at 430; United States v. Humpherys, 57 M.J. 83, 89-90 (C.A.A.F.2002); United States v. Tanksley, 54 M.J. 169, 175 (C.A.A.F.2000); United States v. Matthews, 53 M.J. 465, 473 (C.A.A.F.2000). M.R.E. 413 and 414 freed prosecutors from the restraints of M.R.E. 404(b) and for the first time permitted evidence of an accused’s past acts to demonstrate the propensity of the accused to commit other such acts. Although “propensity” has been defined in slightly differing terms *101 by various sources, the common theme is the focus on “nature” as the source of the inclination,[5] reinforcing the classification of such evidence as “character evidence.” In short, the evidence is offered to show that the character or nature of the accused is such that he or she is predisposed to commit the charged offense, based on similar conduct undertaken by the accused in the past. As I see it, in the context of any comparative “state of mind” or character evidence, there is a roughly graduated scale — with mere unity of identity at one end and absolute identity of cognitive state at the other — along which such evidence will generally fall. While I agree that mere unity of identity may be sufficient to establish relevance when reasonable identity of cognitive state can be assumed (as in the acts of most adults), I do not believe we should apply that assumption to bridge the frequently vast chasm of puberty and adolescence. With this in mind, I believe our logic in McDonald must control our examination of this even more powerful evidence.
As the majority notes, children are not miniature adults. Evidence that an accused possessed some cognitive characteristic at age twenty-one might logically be presumed relevant to whether the accused had that same characteristic at age twenty-nine; however, consistent with our logic in McDonald, I cannot agree that evidence of a cognitive characteristic at age thirteen can be assumed to be logically relevant to whether the accused had that same cognitive characteristic at age twenty-one.
For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood.
Laurence Steinberg & Elizabeth Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 American Psychologist 1009, 1014 (2003). Professors Steinberg and Scott also note that:
studies of criminal careers indicate that the vast majority of adolescents who engage in criminal or delinquent behavior desist from crime as they mature into adulthood (Farrington, 1986). Thus the criminal choices of typical young offenders differ from those of adults not only because the choice, qua choice, is deficient as the product of immature judgment, but also because the adolescent’s criminal act does not express the actor’s bad character.
Id. at 1015.
In addition to the concerns we expressed in McDonald, we have also recognized that, even absent the complicating factors of puberty and adolescence, “[e]ven an individual with certain characteristics may have internal self-monitoring which may or may not cause them to act similarly in various situations.” United States v. Dimberio, 56 M.J. 20, 27 (C.A.A.F.2001).
While I agree that M.R.E. 413 has significantly reduced the analytical importance of temporal proximity between the charged acts and prior, similar acts introduced under that rule, I cannot agree that the rule creates a bypass around M.R.E. 401 and 402 or creates a “happenstance equals relevance” equation. Discussing Fed.R.Evid. 413, which uses language similar to that of M.R.E. 413, the Eighth Circuit noted that: ‘We have previously stated that this rule supersedes Rule 404’s prohibition against character evidence, allowing testimony of prior bad acts in sexual assault cases, provided that it is relevant.” United States v. Bird, 372 F.3d 989, 992 (8th Cir.2004). In sexual assault and child molestation cases, evidence that the defendant committed a prior similar offense “may be considered for its bearing on any matter to which it is relevant,” including the defendant’s propensity to commit such offenses. Fed.R.Evid. 413(a), 414(a). “If relevant, *102 such evidence is admissible unless its probative value is ‘substantially outweighed’ by one or more of the factors enumerated in Rule 403, including ‘the danger of unfair prejudice.’ ” United States v. Gabe, 237 F.3d 954, 959 (8th Cir.2001)(quoting United States v. LeCompte, 131 F.3d 767 (8th Cir.1997)).
This is not to say here, nor did we so hold in McDonald, that the acts of a child cannot be relevant to determination of the state of mind of that child as an adult. 59 M.J. at 430. Rather, in this arena of great potential probity and great potential prejudice, we must follow the rule and require that threshold relevance to the specified “fact” be demonstrated with the same level of scrutiny we would apply to any other evidence offered for any other purpose. Expressed another way, we should not be so confident in the crucible of M.R.E. 403 that we assume, for purposes of M.R.E. 413, that happenstance equals relevance. This is particularly so, given that in Wright we emphasized the importance of M.R.E. 401 and 402, and in McDonald we denounced the assumption that happenstance equals relevance with regard to similar evidence offered under M.R.E. 404(b). Because I am not convinced that the military judge made that critical comparison in this case, I cannot express confidence in the lower court’s conclusion that there was no abuse of discretion in this quarter.

. We noted in Wright that M.R.E. 413 and Fed. R.Evid. 413 "are virtually the same.” Wright, 53 M.J. at 480 n. 4. Accordingly, analysis of Fed. R.Evid. 413 also illuminates M.R.E. 413. In a discussion of Fed.R.Evid. 413, two scholars commented:
"The evidence permitted is broadly defined as any act that would be either a state or federal crime related to either sexual assault or child molestation. The limitations appear to be only relevance and the requirement that the prosecution provide fifteen days notice of its intent to use evidence pursuant to these rules.” 1 Barbara E. Bergman and Nancy Hollander, Wharton’s Criminal Evidence (15th ed,1997)(footnotes omitted)(commenting on the nearly identical text of Fed.R.Evid. 413 and 414).
§ 4.42 at 458-59.

. Of course, mens rea and character are not congruent concepts, but in the context of this evidence and the purpose for which it was offered, the two are logically indistinguishable.

. "Propensity evidence” is a form of character evidence. See 2 Stephen A. Salzburg et al., Federal Rules of Evidence Manual § 413.02[2] (8th ed.2001).

. Although McDonald addressed M.R.E. 404(b), the concept of legal and logical relevance runs through the military evidentiary rules, including M.R.E. 401, 402, 403, 404(b), 413, and 14, along with the other § IV rules.

. Webster’s Third New International Dictionary of the English Language (1961)(a natural inclination). See, e.g., Merriam Webster’s Collegiate Dictionary (11th ed.2003)(defining propensity as "an often intense natural inclination or preference); Webster’s New Word College Dictionary (4th ed.l999)(propensity is a natural inclination or tendency”).